CHICAGO AND ALTON RAILROAD CO.

*v.*

MILEM M. ENGLE.

| 84 | 397 |
| 74a | 398 |

| 84 | 397 |
| 199 | ³ 15 |

| 84 | 397 |
| 103a | ³204 |

1. RAILROAD COMPANY—*care required of them in proportion to the danger of injury at a given place.* Where stock is permitted by law to run at large in a town or village through which a railroad runs, and the fact is known to the operators of the road, they will be held to a higher degree of care than where they have the road fenced and have no reason to expect stock will be found on their track.

2. NEGLIGENCE—*permitting stock to run at large is not, unless prohibited by law.* It is not negligence for the owner of stock to permit it to run at large in a village through which a railroad runs, if it is not prohibited by law.

3. SAME—*running trains through towns at high rate of speed.* It is the duty of a railroad company, whose road runs through a village, to run their trains, whilst in the village, at such a rate of speed as to have them under control, and be able to avoid injury to persons or property, though there is no ordinance of such village on the subject; and if they fail to do so they are guilty of negligence.

APPEAL from the Circuit Court of Menard county; the Hon. LYMAN LACEY, Judge, presiding.

Mr. N. W. BRANSON, for the appellant.

Messrs. MORRISON, WHITLOCK & LIPPINCOTT, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This case has been before us on two previous occasions. But, on the first, the judgment was reversed because erroneous instructions had been given, and on the next the judgment was again reversed, because improper instructions were given by the circuit court on the trial. These objections not existing in this record, we shall proceed to determine whether the evidence sustains the finding of the jury. In the view we take of the case, we regard it unnecessary to discuss the meaning of the ordinance read in evidence.

There was a count in the declaration, not on the ordinance, but for a common law liability, for negligence. That an action on the case may be maintained for injury sustained, arising from negligence in operating railway trains, independent of statutory enactment, is undeniably true. The question then arises, whether the evidence shows the company were guilty of such negligence as renders them liable under the common law.

It has been repeatedly said by this court, that such bodies, in exercising their franchises and operating their roads, must be held to the observance of reasonable care and precaution; that in passing over and through great and populous thoroughfares and localities, they must be held to a higher degree of care than in places where but few people are found; that their caution and diligence must be commensurate with the known danger of the situation; that regard for human life and safety demands a degree of care in proportion to the danger of operating their cars in the various localities over which they run; that in a populous city, town, or a place where persons resort in great numbers, a greatly higher degree of care is required than in the country, or at places where people seldom resort or are found. The same is true in regard to stock running at large. Where they are properly on the commons, and the fact is known to the operatives of such roads, they must be held to a higher degree of care than where they have their roads fenced, and have no reason to expect stock will be found on their track. In villages of this character it would be impracticable to fence their roads, and they, and all others, know that persons are passing at all hours of the day and night. They also know that stock usually are permitted to run at large on the streets and vacant spaces in such villages. Hence they must be charged with a higher degree of care at such places than others of less exposure to danger.

The requirement that those operating these great bodies and immense forces, shall use them with all the care consistent with their practical use, renders it necessary that they shall avoid injury to others in exercising their privileges. Persons

have just the same right to cross and pass along the streets of the village, and, if necessary or convenient, over railroad tracks, in the corporate towns or villages, as the company have to run their cars on their track; and when not prohibited by law, persons may permit their horses and cattle to be at large in such villages. Because such bodies are permitted to pass through such places, and in doing so, when they occupy public streets for the purpose, they acquire the right burthened with the duty that they shall exercise the care, and use the proper effort, to avoid injury to persons and property which the situation demands. Their right to occupy is not exclusive at such places, nor is it better or higher than that of the citizen.

Then, from the evidence in this case, were the jury warranted in finding that the company were guilty of negligence? The employees of the company certainly knew the track was not fenced through the village. They knew that persons might, at any hour of the night, be on the track or crossing over it; and they knew the same was true of cattle and horses. Knowing of this danger, it was their duty to have run through, or whilst in the village, at such a rate of speed as to have their train under control, and able to avoid injury to persons or property. But, from the evidence, it is an irresistible conclusion, that the train that killed this horse was running at a high rate of speed. This is shown by the testimony of witnesses who saw it; but the fact is conclusively shown, as the train, after it struck the horse and the forward trucks of the engine were thrown from the rails of the track, ran across the ties for the distance of more than ninety paces. The engine-driver must have known this fact at the instant it occurred, and, if at all cautious, must have reversed his engine, and if he did so, the train must have been running at an exceedingly high rate of speed for the momentum to carry it such a distance with the flanges of the truck wheels striking the sides of the ties almost squarely. If, however, the steam was only cut off, the speed must have been very great for the mere momentum to have carried the train such a distance. From all of the evidence on the question, we are clearly of opinion that

this train was, at the time, running at a highly dangerous rate of speed; that, if it was not absolutely reckless, it at least amounted to very gross negligence; and the jury were warranted in so finding. In fact, we fail to see how they could have done otherwise.

On the other hand, we fail to see, from the evidence, that appellee was guilty of any negligence. It is true, his horse was at large in the streets and open space in the village, but the law permitted it, and it was his legal right. He was not required to forego his legal rights for the convenience of the railroad company. He, and all others, have the unquestioned right to stand upon and claim all their privileges, whether statutory or common law. The evidence satisfies our minds that appellee was guilty of no negligence, and the company were guilty of gross negligence; and the evidence is clear, that the horse was killed by the train, and that through the culpable negligence of the employees of the company, and they should respond in damages for the injury thus inflicted.

The judgment of the court below must be affirmed.

*Judgment affirmed.*