# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

The Chicago City Railway Company

*v.*

Jennie Fennimore.

*Opinion filed October 25, 1902.*

1. APPEALS AND ERRORS—*amount of damages is not a question open in Supreme Court.* The amount of damages sustained by the plaintiff in an action at law is a question of fact which is not open for consideration in the Supreme Court.

2. INSTRUCTIONS—*it is not error to refuse substantial repetitions of given instructions.* It is not error to refuse instructions the substance of which is fully covered in others given.

3. STREET RAILWAYS—*jury should say whether running car at night without good headlight is negligence.* It is for the jury to say whether a street car company was negligent in running a cable train on a dark and foggy night with a headlight so small and dim as to be scarcely noticeable.

4. SAME—*use of due care in streets is independent of statutory regulation.* A street car company is always required to use due care to guard against injury to persons rightfully traveling upon public streets, independently of statutory regulation on the subject.

5. SAME—*gripman is required to use more care when approaching street crossing.* Drivers, gripmen or motormen on street cars are required to use more care in approaching street crossings in a crowded city than at other places.

6. SAME—*right of person to assume that street car will have headlight.* One approaching a street car track at a crossing in the night time has a right to rely upon the belief that no train would approach without a headlight, and has a right to assume, if he sees no headlight, that no train is approaching.

7. SAME—*when question of plaintiff's contributory negligence is for the jury.* If a person intending to take a south-bound cable train looks northward twice before stopping to let a north-bound train pass, but sees no headlight of a south-bound train approaching, it is for the jury to say whether she was negligent in not looking a third time before stepping on the track after the other train had passed.

*Chicago City Railway Co. v. Fennimore,* 99 Ill. App. 174, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This is an action in case, brought in June, 1895, by the appellee against the appellant railway company to recover damages, sustained by her, for a personal injury. She charges in her declaration, that she was struck by one of appellant's cable trains at the corner of Forty-eighth and State streets in the city of Chicago on the night of April 30, 1895. The trial in the court below resulted in verdict and judgment in behalf of appellee for the sum of $2250.00. An appeal was taken to the Appellate Court, and the Appellate Court has affirmed the judgment. The present appeal is prosecuted from such judgment of affirmance.

The material facts are thus stated by the Appellate Court:

"The injury happened on the tracks of appellant on State street at Forty-eighth street. At that point there was a double track, the east one being used for north-bound cable trains, and the west one for trains south-bound. Appellee lived on the east side of State street, about midway between Forty-seventh and Forty-eighth streets. On the evening in question she left her home to go to Englewood, which lay southward, and she desired

to take a south-bound train. Coming to the sidewalk, she looked north for an approaching train, but seeing none, she walked along on the sidewalk on the east side of the street southward to Forty-eighth street. There she started to cross State street to reach the west side of the street, in order to get in the proper place to take a south-bound car. In doing so, she says she walked 'cat-a-cornered' (presumably from the north-east corner of Forty-eighth and State streets). Just before reaching the east or north-bound track, a north-bound train came along and she stopped to let it pass. It went by at the usual rate of speed without stopping. Just before, or as it passed her, she looked again in the direction of Forty-seventh street for an approaching train, but saw none, and, as soon as the north-bound train passed, she stepped in behind it, and crossed the track on which it was running, and was about to step on to the south-bound track when she was struck by the grip car of a south-bound train, and injured in the manner complained of."

WILLIAM J. HYNES, and WATSON J. FERRY, (MASON B. STARRING, of counsel,) for appellant.

JAMES C. McSHANE, for appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

Counsel for appellant say in their brief: "The grounds, upon which appellant relies for a reversal of the judgment herein, are: (1) That the verdict is against the evidence; (2) error in the giving of improper, and the refusal to give proper, instructions to the jury; (3) that the verdict is excessive."

*First*—The statement, that the verdict is excessive, is, of course, merely another form of stating that the damages are excessive. We have frequently held that the amount of damages, sustained by the plaintiff in an action

at law, is a question of fact, which is not open for consideration in this court, under the statute. (*West Chicago Railroad Co.* v. *Bode,* 150 Ill. 396, and cases cited; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Walsh,* 157 id. 672).

*Second*—The objection, that the verdict is against the evidence, is not an objection that can be entertained by this court. Under this objection, however, and as a part of it, appellant claims, that the trial court erred in refusing, at its request, to give to the jury a written instruction to find the issues for the defendant. It has often been said by this court, that a case ought not to be taken from the jury, if there is evidence tending to sustain the cause of action. (*Lake Shore and Michigan Southern Railway Co.* v. *Johnsen,* 135 Ill. 641; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Walsh, supra*). There is evidence in the record, tending to establish the cause of action set up in the declaration.

In order to entitle the plaintiff to recover in an action of this kind, it must appear that the defendant has been guilty of such negligence as produced the accident or injury, and that the plaintiff, at the time of the accident, was in the exercise of ordinary care for his or her safety.

In the first place, the evidence tends to show that the appellant was guilty of such negligence, as produced the injury complained of. The grounds of negligence set up in the declaration are that, at the street crossing where the accident occurred and at the time of its occurrence, to-wit, at the hour of 8:30 o'clock in the evening and while it was dark, the appellant was propelling the train of cable cars, which inflicted the injury, at an unreasonable rate of speed, and without ringing a bell as a warning of its approach, and without maintaining a proper and suitable headlight upon the forward car, which struck the appellee. The evidence tends very strongly to show, that whatever headlight there was was dim in its character, and insufficient to enable a person, standing at even a short distance ahead of the train, to see its ap-

proach upon a dark night. The appellant's gripman testifies that, when the train in question was going north, he discovered, when it reached Fortieth street, that the chimney of the lamp, supposed to furnish the light, was broken, and that he was obliged to turn the light down. He says: "The chimney was toppled over in the top a little. It could not fall in any way. It was broke." Some six or seven other witnesses testify as to the dimness of the headlight, and that the chimney of the lamp was either broken, or the light turned down too low. They say that the light could not be seen plainly, inasmuch as it was filled with smoke on the inside. The witnesses differ as to the distances, at which the light could be seen, as the train approached. Some of them say, that the light was so dim as to make it impossible to see the approach of the train at the distance of half a block. Other testimony shows, that it was impossible to see the headlight even at a less distance than half a block, and at a distance not greater than the width of the street or crossing. As the evidence was conflicting in regard to the character of the headlight, it was a matter to be determined by the jury, and was properly submitted to them under the instructions of the court.

"Where the cars are operated at night, a headlight should be kept, the bell constantly sounded, and other means used to warn those who may happen to be on the track." (23 Am. & Eng. Ency. of Law,—1st ed.—p. 1023; *Rascher* v. *East Detroit, etc. Railroad Co.* 90 Mich. 416; *Johnson* v. *Hudson River Railroad Co.* 20 N. Y. 65; *Little* v. *Grand Rapids Street Railroad Co.* 78 Mich. 205; *Button* v. *Hudson River Railroad Co.* 18 N. Y. 248). In *Burling* v. *Illinois Central Railroad Co.* 85 Ill. 18, this court said: "It is a high degree of negligence to run trains without a headlight on a night so dark as this was." In the case at bar, there is evidence, not only tending to show that the night was dark, but also that it was a foggy night. In *Baltimore and Ohio Southwestern Railway Co.* v. *Alsop*, 176 Ill. 471, this

court again said: "It is a high degree of negligence to run a train without a headlight on a dark night, as this was shown to be." There was some evidence, tending to show that no bell was rung, but as the evidence upon this subject was conflicting, it also was properly submitted to the jury to determine. The proof tended to show that the train was traveling at the rate of twelve miles an hour, and that that was its usual rate of speed. It may be true, as is claimed by counsel for the appellant, that the rate of speed at which the train was going was not evidence of negligence *per se.* But it is to be remembered that this accident occurred at a street crossing in a large and populous city, and in the night time. Booth in his work on Street Railway Laws, (sec. 306) says: "A greater degree of watchfulness is necessary at street intersections, especially at crossings which are usually thronged with vehicles and persons on foot, and at curves in the street or route." In the case at bar, the evidence shows that, when the train which struck the appellee was at the crossing of Forty-seventh and State streets, one block north of Forty-eighth street, a wagon passed directly in front of the train in question. This necessarily caused a slackening of the speed of the train at that point, and, therefore, it must have been hurried into a greater rate of speed, as it passed southward to the crossing of Forty-eighth and State streets. It is the doctrine of this court that drivers, gripmen and motormen of street cars are obliged to exercise a more exacting attention, when they approach street crossings in a crowded city, where vehicles and pedestrians may always be expected in front of them. "The failure under such circumstances to ring the bell, sound the gong or give other proper warning is undoubtedly evidence of negligence to be submitted to a jury under all the circumstances, whether there is an ordinance requiring such precautions or not." (*North Chicago Electric Railway Co.* v. *Peuser,* 190 Ill. 67; *West Chicago Street Railroad Co.* v. *McCallum,* 169 id.

240; *Chicago City Railway Co.* v. *Robinson,* 127 id. 9; *Chicago City Railway Co.* v. *Tuohy,* 196 id. 410; 2 Thompson on Law of Negligence, secs. 1399-1401; *Chicago, Burlington and Quincy Railroad Co.* v. *Perkins,* 125 Ill. 127).

Although no ordinance, limiting the speed at which cable cars were allowed to run in the streets of Chicago, was introduced, yet, in each case, it must be a question for the jury to decide whether or not, under the facts and circumstances of that particular case, the speed is or is not a dangerous or unreasonable rate of speed. A railroad company in the running of its trains is always required to use ordinary care and prudence to guard against injury to the persons or property of those, who may be rightfully traveling upon the public streets; and this is true whether there is a statutory regulation upon the subject or not. (*Chicago, Burlington and Quincy Railroad Co.* v. *Perkins, supra; Chicago and Alton Railroad Co.* v. *Engle,* 84 Ill. 397; *Wabash Railroad Co.* v. *Henks,* 91 id. 406; *Illinois Central Railroad Co.* v. *Slater,* 129 id. 91; *Same* v. *Same,* 139 id. 190; *Elgin, Joliet and Eastern Railway Co.* v. *Raymond,* 148 id. 241). Where a cable train is running along the street in a city like Chicago on a dark and somewhat foggy night, with a headlight so small and dim as scarcely to be noticeable, or, if noticeable, likely to be mistaken for some other light, we are not prepared to say that it is error to submit to the jury the question, whether the company, propelling such train under such circumstances, is or is not guilty of negligence. The question does not arise here whether the speed of the car might have been justifiable if the headlight had been in good condition, but with such a headlight as the evidence shows in the present case, it would seem to have been the duty of the persons propelling the car to run it at a reduced rate of speed. In *Rascher* v. *East Detroit, etc. Railroad Co. supra,* the Supreme Court of Michigan said: "A street car can neither turn to the right nor left. * * * It ought to be lighted in the night time, so that its

approach can be seen by other travelers; and between twilight and dark, if not lighted, it ought to be run so slowly as to avoid collision, or else give, by some signal, warning of its approach."

We also think that there is evidence in the record, tending to show that the appellee was in the exercise of ordinary care for her safety. At any rate, it was a fair question to be submitted to the jury whether or not she was in the exercise of reasonable care for her safety. When she came out of her house between Forty-seventh and Forty-eighth streets, she looked northward to see if a train was approaching, and swears that she could see none. At the north-east corner of Forty-eighth and State streets she started to cross diagonally to the south-west corner of Forty-eighth and State streets, inasmuch as the car, which she wanted to take, going southward, would pass upon the west track, and would stop at the south side of the crossing. When she started across the street, and was between the curb-stone and the east rail of the east track, she again looked northward and saw no train approaching. She then stopped and waited until a train, coming from the south and going northward, passed her. When this train passed, she stepped in behind it to cross to the west side of the street, and was struck by the train, coming from the north and going towards the south, which, she swears, she did not see. The ground, upon which it is alleged that she is chargeable with negligence, is that she did not again look a third time towards the north to see whether or not a train was approaching, after the train going northward had passed. It has often been held by this court, that it is not evidence of negligence *per se* that a person does not stop and look before crossing the track of a railroad, and it has been held to be a question for the jury to say, whether the failure to so stop and look is or is not negligence. Inasmuch as the appellee looked northward twice, as has already been stated, the question, whether

or not it was negligence on her part not to look north-
ward a third time, after the train, which she did not
intend to take, had passed, was one for the jury to de-
termine under the instructions of the court.

Anticipation of negligence in others is not a duty
which the law imposes. On the contrary, it is a pre-
sumption of law that every person will perform the duty,
enjoined by law or imposed by contract. Where, for in-
stance, the traveler knows that the law requires a rail-
road company to ring a bell, or sound a whistle, he has
a right to rely upon the performance of such duty by the
company. (2 Jaggard on Torts, p. 970; Shearman & Red-
field on Negligence, sec. 92; *St. Louis, Vandalia and Terre
Haute Railroad Co.* v. *Dunn*, 78 Ill. 197; *Chicago, Burlington
and Quincy Railroad Co.* v. *Gunderson*, 174 id. 495; *Thomas*
v. *Railway Co.* 8 Fed. Rep. 732). In the case at bar, appel-
lant owed it, as a duty to appellee and to the public gen-
erally, to equip its trains with proper headlights. When
appellee started to cross the street, she had a right to
assume that the appellant would perform this duty, and
had a right to rely upon the belief that no train would
approach without a proper headlight. If she saw no
headlight, she had a right to assume that no train was
approaching. It has been held that the traveler is not
at fault in failing to look and listen, if he is misled with-
out his fault. There may be various circumstances,
which excuse him from stopping to look and listen; and
if the evidence tends to show that there was such an ex-
cuse, the existence of it is a matter for the determination
of the jury, and to be submitted to them. (*Chicago and
Northwestern Railway Co.* v. *Hansen*, 166 Ill. 623; *Hayes* v.
*Northern Pacific Railroad Co.* 74 Fed. Rep. 284; *Chicago and
Alton Railroad Co.* v. *Pearson*, 184 Ill. 386; Shearman & Red-
field on Negligence, sec. 485 c, and cases there referred
to). In the case at bar, if the evidence showed that
appellee did not look a third time, it was for the jury to
say, whether or not she was excused from so doing by

all the circumstances of the situation which faced her. It was a dark night; a train had just passed on the track nearest to her; the light of the approaching train was exceedingly dim; and although its light was dim, the approaching train was running at full speed. By their verdict the jury have found that all the circumstances surrounding her constituted a sufficient excuse for the failure of the appellee to look again before stepping from behind the north-bound train. (*Chicago and Western Indiana Railroad Co.* v. *Ptacek*, 171 Ill. 9; *Chicago and Eastern Illinois Railroad Co.* v. *O'Connor*, 119 id. 586; *Maginnis* v. *New York, etc. Railroad Co.* 52 N. Y. 215).

In view of what has been said, we are of the opinion that the trial court committed no error in refusing to instruct the jury to find for the appellant.

*Third*—Appellant complains that the court erred in the giving and refusal of certain instructions. Complaint is made that the court erred in giving the first instruction given for the appellee. This instruction is substantially the same as the third instruction, commented upon by this court and approved in *Chicago and Alton Railroad Co.* v. *Fisher*, 141 Ill. 614. Moreover, at least four instructions were given by the court at the request of the appellant, and in its behalf, which told the jury that the appellee could not recover, unless it was shown by the evidence that she was exercising ordinary care, and thereby the alleged omission in the instruction complained of was cured.

It is also urged as error, that the court gave the third instruction which was given for the appellee. This instruction is a *verbatim* copy of instruction numbered 1, of which this court said in *Taylor* v. *Felsing*, 164 Ill. 331, that there was no valid objection to it.

It is said that the court below erred in giving the sixth instruction which was given for the appellee. This instruction is a *verbatim* copy of the third instruction given for the plaintiff, referred to in *Chicago, Burlington*

*and Quincy Railroad Co.* v. *Warner*, 108 Ill. 538, and there approved by this court.

Complaint is next made of the refusal to give appellant's second refused instruction to the effect that, if appellee could, by the exercise of reasonable care, have avoided the injury, there could be no recovery. The proposition, embodied in this instruction, was fully covered by the second, third and sixth instructions given for the appellant.

Complaint is also made that the court refused to give an instruction asked by the appellant, telling the jury that a witness could be impeached by showing that such witness had made different and contradictory statements on material points on former occasions. The material part of the instruction, whose refusal is thus complained of, was given in other instructions which told the jury that, if any witness willfully swore falsely to any matter or thing material to the issues, then they were at liberty to disregard his or her entire testimony, except in so far as it had been corroborated, etc.

Complaint is also made of the refusal of the court to give for the appellant an instruction, which informed the jury that they had a right to take into consideration the interest witnesses had in the suit in determining the value of their testimony. The substance of this instruction was given in other instructions, and, therefore, its refusal could have done no harm.

The instructions were unusually full and were favorable to appellant. It has no just ground to complain in that regard. Under such circumstances, if the court committed slight error in refusing some of appellant's instructions, such error affords no ground for reversing the judgment. (*Lake Shore and Michigan Southern Railway Co.* v. *O'Conner*, 115 Ill. 254).

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*