## Leighton & Howard Steel Company v. Joseph Snell.

1. MASTER'S DUTY—*to control appliances.* It is the duty of the master to control appliances which are under his direction in such manner as not to subject his servant, performing his orders and doing his work, to unnecessary danger.

2. OBJECTION—*when does not avail on appeal.* To avail, on appeal, of an objection, the objector must have insisted upon and obtained a ruling, or it must clearly appear that he insisted upon a ruling and that the court refused to rule.

3. ASSUMED RISK—*what evidence competent upon question of.* Where the plaintiff in an action for personal injuries was a moulder's helper, it is competent to show that he was subject to the orders of the moulder.

4. ASSUMED RISK—*what evidence competent upon question of.* Where the plaintiff in an action for personal injuries was a molder's helper, it is competent upon the question of assumed risk to show the molders' duties and the relations of the helpers to them, and this by witnesses whose length of service had not been long, as the shortness of such service goes to the weight rather than to the competency of the evidence.

5. SPECIAL INTERROGATORY—*when does not relate to ultimate fact.* A special interrogatory as follows: "Could the plaintiff by the exercise of ordinary care on his part, have seen this traveling crane coming towards him in time to have avoided it," is properly refused as not relating to an ultimate fact.

6. FELLOW-SERVANTS—*who not.* Held, that molders and their helpers were not fellow-servants but that the former were as to the latter vice-principals.

Action on the case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed March 17, 1905.

WISE & McNULTY, for appellant.

F. C. SMITH and M. MILLARD, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit in case, in the City Court of East St. Louis, by appellee against appellant, to recover for a personal injury sustained by appellee while in the service of

appellant, as a molder's helper. Trial by jury. Verdict and judgment in favor of appellee for $1,999.

The declaration consists of but one count and states in substance as follows: that appellant was engaged in the business of making steel castings; that appellee was in the service of appellant in the capacity of a molder's helper; that it was the duty of appellant to exercise ordinary care to furnish appellee a reasonably safe place in which to perform his duties, and not to expose him to unnecessary peril; that appellant negligently ordered appellee to get on top of a certain stationary crane which had been out of order, and to put the same in workable order; that this was a dangerous service for appellee to render, and that he did not comprehend the peril incident to the performance of it; that while appellee was endeavoring to put the crane in order, with due care and diligence, appellant so carelessly and improperly managed a certain other crane that appellee was struck and injured. Appellee's injuries consist of the loss of all the fingers with the exception of the thumb, on his right hand, and the breaking of some of the bones of his left hand.

The evidence tends to prove every material allegation of the declaration, and we deem it necessary only to state such of the facts which the evidence tends to prove and which the jury was warranted in finding to be true as will help to the understanding of the particular questions raised on this appeal.

Appellant was engaged in the making of heavy castings. The molds for these castings were made by employees called molders assisted by others called helpers. After a mold was completed the molders and their helpers had to remove it to "one side," so that it might be taken away by an overhead traveling crane. For the purpose of removing the molds to the place where the traveling crane could get them, the molders had in use and under their control a "hoist" called a "jib crane," which was stationary, and operated by means of an arm upon which was a small truck that ran backwards and forwards on a track. The traveling crane

Leighton & Howard Steel Co. v. Snell.

ran upon a track about three or four feet above the arm of the jib crane. The arm of the jib crane was about twenty feet long and its motion was confined to a half circle. This crane was used by the molders as occasion required. The traveling crane was operated by a man called a crane-man. It did not move at regular intervals, but was liable to move at any time. Its track covered a course of considerable distance, and it ran fast, "as fast as a street car that ain't running at a terrible speed;" that appellee was employed by the general foreman, who had authority to employ and "lay off" men; that when he was employed the foreman took him to the department of the molders, put him to work as a molder's helper and told him to "obey the molders;" that he had always been a farmer; that when he had been in this service for about two weeks, on one occasion when the molders desired to use the jib crane, it was discovered that the truck was off the track, and one of the molders told him to go up and put it on the track; "that when he received the order from the molder to put the truck on the track he was from twelve to fourteen feet from the wall, and that he then looked to see where the overhead crane was and that it was not in motion, and was about 150 feet west of him;" that the arm of the jib was pointing away from the traveling crane and he had his back to the traveling crane; that just as he made an attempt to lift the truck onto the track the traveling crane struck him. The evidence also tends to prove that appellee could have seen the crane approaching in time to have avoided it if he had been facing that way, or if he had turned to look in the direction from which it came, and that the molder who ordered him to go up and fix the trucks was standing there and looking up and might have seen its approach in time to have given warning.

Counsel contend that while it was appellee's duty to obey the molders, that the molders had no authority to repair the jib, nor to order their helpers to do so and say appellant kept machinists for the purpose of making such repairs. The evidence clearly shows that while there were machinists whose duty it was to make repairs when called upon

to do so, these trucks frequently got off the track and that it was usual for the molders and their helpers to put them on the track again, and it does not appear that there was anything in connection with putting them on that required the skill of a machinist; and further, this was one of the appliances in use by the molders, and appellee was put under the charge of the molders and directed to obey them, when he was employed. As between appellee and appellant, it cannot be said that appellee was not in the line of his duty at the time of his injury, nor that the molder exceeded his authority in sending him there.

In this connection it is argued that the weight of the evidence is not on the side of appellee, upon the issue as to whether the molder did, in fact, give the order directing appellee to go up and put the truck on the track. Appellee and another witness testify to it as positively and clearly as language can state it, and the molder alone denies it, and says what he said was, "that will have to be fixed." We think the finding of the jury upon this question should be conclusive of it.

Counsel contend if appellee was ordered to go up and put the truck on the track, that he assumed the risk and cannot recover for the injury. They say he had been at work in the same place for two weeks; that the crane that injured him was large and could be seen from any part of the floor on which he worked; that he knew "it did not have any particular time to run," and that it came and went as the work required it; that he knew if the crane came along while he was there it would hit him, and if it ran over his fingers it would cut them off. Therefore they say, the danger was open and apparent and that appellee fully comprehended the peril, and that in attempting, without protest, to execute the order, he assumed all risk. In this connection it must be borne in mind that appellant, in the person of its vice-principal who gave the order, was present while appellee was attempting to execute the order; that at the time he started to execute the order the crane that injured him was standing still a hundred and fifty feet away, and that it only came

and went as the condition of the work required it; that it was one of appellant's appliances and as much under appellant's control as appellee himself was; and that so long as it remained still, or as its movement was controlled with due respect to the position in which appellant had placed appellee, there would be absolutely no danger from it. Appellant, the master, had control of all its servants and all its appliances, and it was its duty to control its other servants and appliances with due regard to the danger of the position in which it had, for the time being, placed appellee; and appellee had a right to rely and act upon the presumption that appellant would perform this duty. The facts of this case bring it within the class of that "large number of decisions of both our Supreme and Appellate Courts which have held that in obeying an order, a servant does not assume the risk or danger connected therewith." The only risk in obeying this order was the risk that appellant would fail to perform its duty in respect to controlling its other servants and appliances with due regard to the position in which it had placed appellee. The risk of negligence or failure to perform a duty is not a risk assumed by the servant, except under a particular state of facts not in any part disclosed in this record.

It is claimed, if it should be found that appellee did not wholly assume the risk, that he was guilty of contributory negligence and is for that reason barred of all right to recovery. It is true that contributory negligence on the part of the injured party is a controlling factor in this character of case, and if appellee was guilty of contributory negligence he cannot recover. Whether or not he was so guilty must be determined by applying the test rule to all the facts and circumstances of the case. "One is required to exercise such care and caution for his own safety as an ordinary prudent and careful person would ordinarily exercise, under the same or similar circumstances." This question was directly submitted to the jury in appellant's third special interrogatory. The interrogatory and answer are as follows: "Did plaintiff, while going up to, and while he was

on the jib crane, use that care to avoid injury which an ordinarily prudent man would have used under like circumstances to avoid being injured by the traveling crane?" "Answer, Yes." We are of opinion that the state of the evidence warranted the jury in returning the answer returned by them, and that this is conclusive upon that issue.

Complaint is made of certain rulings of the trial court as to the admission of evidence. A witness who was in the service of appellant as molder's helper, in the same department as appellee, and at the same time, was asked: "Under whose directions did the molders' helpers work?" He answered: "Under the molders' orders; that is, you were hired by the foreman and took to the molders and the foreman told me, he says, 'You got to do as the man tells you.'" An objection was interposed to the answer, but the court did not rule on it, and the record does not disclose that appellant insisted upon a ruling. To avail, on appeal, of an objection, the objector must have insisted upon and obtained a ruling, or it must clearly appear that he did insist upon a ruling and that the court refused to rule. The same witness was asked, "What was Mr. Snell's duties with reference to obeying the orders and directions of the molders?" Answer: "Well, if he was a helper, his duties were to do as the molders told him to. Whatever they told him to do, he was supposed to do." To this question appellant objected on the ground that the "witness has not testified he knew what orders or directions were given to Mr. Snell." This objection was not well taken. This witness, as above stated, was a molder's helper in the service of appellant at the time appellee was, and the scope and purpose of the inquiry was to prove what a molder's helper's duties were in the course of business as it was conducted in appellant's establishment at that time.

Another witness who was employed in the machine shop and had worked as a molder's helper for a short time only, while appellee was there, testified as to the duties of a molder's helper. His testimony was objected to on the alleged ground that he had not worked as a helper long

enough to know what the duties were. He had had some opportunity to observe how the work was actually conducted, and what duties the respective classes of workmen performed. This witness did not testify as an expert, and the length of time he worked as a helper and his opportunity to observe went to the weight of his evidence and not to its competency; and if there could now be seen any valid objection to that testimony, such objection was waived by not being pointed out at the time. One other witness who worked for appellant in the same capacity, at the same time and on the same floor as appellee, testified on the same subject, and to his testimony a general objection was interposed as follows: "Objected to by defendant." The general purpose of the inquiry was proper, and in such case mere general objections are of no avail, on appeal. And further, appellant introduced a long line of evidence on the same general question.

The giving on behalf of appellee of the 4th, 9th and 13th instructions is assigned as error. Instruction No. 4, as given in this case, in the identical language in which it is here given, has been approved by the Supreme Court in the following cases: Taylor v. Felsing, 164 Ill. 331; Donley v. Dougherty, 174 Ill. 582; Chicago City Ry. Co. v. Fennimore, 199 Ill. 9; Chicago City Ry. Co. v. Bundy, 210 Ill. 48. These decisions of the Supreme Court conclude appellant as to the 4th instruction. And we are of opinion there is no substantial error in either the 9th or 13th. When these are considered in connection with the five special interrogatories submitted to the jury upon request of appellant, and of all the instructions given on its behalf, we think the jury could not have been misled, and from the whole record it is apparent that the jury was not misled.

The refusal of the trial court to submit to the jury the following special interrogatory is assigned as error: "Could the plaintiff by the exercise of ordinary care on his part, have seen this traveling crane coming towards him in time to have avoided it?" This interrogatory does not present an ultimate fact. The ultimate fact as to the branch of

the case to which this refers, is, whether or not under all the circumstances shown by the evidence when it is all considered together, appellee was in the exercise of ordinary care and caution for his own safety. This question was properly submitted to the jury, not only in the instructions given, but was directly submitted in special interrogatory 3, quoted in another part of this opinion.

The question of whether the molders, the molders' helpers and the traveling crane men were fellow-servants, is raised and discussed. This question was submitted to the jury in both the instructions, and in the special interrogatories, and the jury found and answered that they were not fellow-servants. Counsel contend, that as a matter of law under the undisputed evidence they were all fellow-servants. In the view we take of the case the molders, with respect to appellee, were vice-principals, and it is wholly immaterial whether the others were fellow-servants or not.

We find no material error in this record. The judgment of the City Court of East St. Louis is affirmed.

*Affirmed.*