Andrew Lang, Appellee, v. Chicago Railways Company, Appellant.

## Gen. No. 17,556.

1. STREET RAILROADS—*care that driver should use.* A person struck by a street car while driving a wagon across the track cannot recover unless he was at and just before the time of the injury in the exercise of such care for his own safety as an ordinarily prudent person would have exercised under the same circumstances.

2. STREET RAILROADS—*contributory negligence in driving across track.* Where a person is struck by a street car while driving across the track, if the car was at such distance that an ordinarily prudent person knowing the usual speed at which cars were there operated would have undertaken to drive across the street in front of it, at the speed the car was going, he is not guilty of contributory negligence.

3. STREET RAILROADS—*negligence of motorman need not be anticipated.* A person driving across a street car track is not chargeable with contributory negligence merely because he fails to anticipate the negligent, wilful or unlawful acts of a motorman.

4. STREET RAILROADS—*evidence of negligent rate of speed.* A person driving across a street car track at a ''fair'' walk was struck by a street car. The conductor and driver could both see each other, and evidence was given concerning the relative distances apart, the speed of the car, when the brakes were applied, and the distance the car went after striking the wagon. *Held,* the street car was run at an unusual rate of speed not to be anticipated, and that plaintiff was using due care.

5. DAMAGES—*when $4,000 for injury to hip bone is not excessive.*
$4,000 damages for a person struck by a street car is not excessive, where
he was considerably bruised all over, suffered an injury to the upper
end of the femur that left it in an abnormal condition causing lameness
to the time of the trial, suffered much pain in the hip, arm and heart,
and became permanently lame.

Appeal from the Circuit Court of Cook county; the HON. CHARLES M.
WALKER, Judge, presiding. Heard in the Branch Appellate Court at the
March term, 1911. Affirmed. Opinion filed June 30, 1913.

WEYMOUTH KIRKLAND and FRANK L. KRIETE, for
appellant; JOHN R. GUILLIAMS, of counsel.

FRANCIS X. BUSCH, HARRY A. DAUGHERTY and ADOLPH
J. BORGMEIER, for appellee.

MR. PRESIDING JUSTICE GRAVES delivered the opinion
of the court.

Appellee was injured by reason of having the rear
wheel of a wagon in which he was then riding struck
by a street car of appellant, whereby he was thrown
from the seat to the tongue or pole of the wagon. The
accident occurred on Halsted street about midway be-
tween Clay street and Center street. Center street is
north of Clay street. It is 781 feet from the center of
Center street to the center of Clay street. There are
on Halsted street two street car tracks on which appel-
lant was at the time of the accident operating street
cars. The west track was used for south bound cars
and the east track was used for north bound cars. On
the east side of Halsted street opposite the place of the
accident, and approximately midway between Center
and Clay streets, there is a gate leading from the street
into the grounds of a nursery and asylum. Halsted
street was there 66 feet wide. It was 38 feet between
the curbs. The two street car tracks occupied four-
teen feet and five inches. Appellee had driven into this
gate with a wagon loaded with vegetables on an average
of once in each week for three years. The accident

happened between five and six o'clock in the evening of August 14, 1909. At that time appellee approached the place of the accident from the north driving a team of horses hitched to a wagon well loaded with vegetables. He drove down the west side of Halsted street until he reached a point nearly opposite the gate into which he intended driving, when his son, a lad at that time about fourteen years of age, alighted from the wagon where he was riding with his father and went to open the gate. Appellee then turned his horses' heads to the east and drove them at a walk across the two street car tracks towards, and for the purpose of entering, the asylum gate that had then been opened by his son. When his horses and all of the wagon ahead of the rear wheels had cleared the east street car track, a north bound street car struck the hub of the rear wheel of the wagon with sufficient force to push the rear end of the wagon around to the north, draw the team back into the street with their heads to the south, scatter the vegetables about the street, throw appellee from his seat on the wagon, break and disable the street car, and make sufficient noise to attract the attention of persons in buildings near there. While there is a controversy as to how far the car was from the place of the accident when appellee started to cross the street, it is admitted on all hands that the motorman saw appellee when he did so, and that from that time on until the collision occurred there was nothing to obstruct appellee's view of the car or the motorman's view of appellee and his rig. The jury found appellant guilty and assessed appellee's damages at $4,000. Judgment was entered on this verdict and this appeal followed.

Appellant contends that the evidence shows appellee was guilty of such contributory negligence as to bar his right to recover. Unless appellee was at and just before the time of the injury in the exercise of such care for his own safety as an ordinarily prudent per-

son would have exercised under the same circumstances, he can not recover. That was a question peculiarly for the jury, and unless their finding is manifestly against the weight of the evidence, their finding must be upheld by this court. *Chicago Union Traction Co. v. Jacobson,* 217 Ill. 404. Whether appellee was negligent in crossing the street when and in the manner he did depends very largely on how far the car was from him when he started across the street and the speed at which he drove his horses, taken in connection with the ordinary speed at which cars were operated at that place. If the car was at such a distance that an ordinarily prudent person knowing the usual speed at which cars were there operated would have undertaken to drive across the street in front of it, at the speed appellee drove, then he was not guilty of contributory negligence. In determining whether it was safe to cross appellee had the right to assume that the motorman would not wilfully, knowingly or heedlessly run over him or run the car at a high and dangerous rate of speed or at such a speed as to place it beyond his control. While street cars have the paramount right of way on the part of the streets covered by the tracks on which they run, those operating them have no right to deliberately or negligently run down persons or teams that are momentarily infringing on that right. One is not chargeable with contributory negligence merely because he fails to anticipate another's negligent, wilful or unlawful acts. *Chicago City Ry. Co. v. Fennimore,* 199 Ill. 9; *Henry v. Cleveland, C., C. & St. L. Ry. Co.,* 236 Ill. 219; *Dukeman v. Cleveland, C., C. & St. L. Ry. Co.,* 237 Ill. 104.

It was 26 feet and 2½ inches from the west curb to the east side of the east or north-bound street car track there. When appellee started to cross the street, his rig stood north and south close to the west curb of the street. The rig was from the head of the horses to the extreme rear end of the wagon approximately 22

feet in length. The team must, therefore, travel not more than approximately 48 feet before the rear wheels of the wagon would clear the east street car track. They were driven across on a "fair" walk. The entire rig, except the hind wheels, had cleared the east street car track when the collision occurred. According to the testimony of appellee and at least two witnesses, when appellee started his team across the street, the car was standing still at Clay street, a distance of about 450 feet south of appellee. After the car started from Clay street until the motorman put on the brakes it was running, according to the testimony of the conductor and motorman, 10 or 11 miles an hour. The conductor testified that after the brakes had been applied he looked out on the east side of the car and saw the horses just crossing the east street car track; that then the car was 100 feet from the horses; that after the brake was applied the car slowed down until, when it struck the hind wheel of the wagon, it was not going more than three or four miles an hour. According to the conductor the horses when the brakes were applied were just about where the hind wheel of the wagon was when the car struck it. If the conductor's testimony is correct, the horses traveled after the motorman set the brakes on the car about 12 feet, while the car traveled 100 feet at the reduced speed. Again, if the conductor is correct, the horses had traveled more than 30 feet after they started to cross the street before the motorman set the brakes and while the car was traveling at 10 or 11 miles an hour. The car must, therefore, have gone more than three times as far before as it did after the brakes were set, or over 300 feet, making the total distance traveled by the car after appellee started to cross the street and before the collision over 400 feet. This corroborates appellee and his witnesses as to where the car was when appellee started to cross the street. The motorman testified that the car was within 75 or 100 feet of where appellee crossed

the street when he first started to do so, but admits his judgment on distances is not reliable. He also testified that the car he was running was 18 to 20 feet long. The conductor says it was 30 to 35 feet long. The motorman also testified he could stop the car in 75 to 100 feet under the conditions existing at the time in question. According to his own testimony the motorman had time and room to stop the car and avoid the collision after he admits he saw appellee start to cross the street. Other witnesses place the distance between the car and appellee at the time in question variously, but we think the fair preponderance of the evidence shows it to have been about as claimed by appellee, or from 400 to 450 feet.

The witnesses for appellee and some of the witnesses for appellant place the rate of speed of the car, as it approached, struck and passed the wagon of appellee, very much faster than the motorman and conductor, some of them placing it as high as 18 miles an hour, others of them describing it as "fast" and "very fast." The distance the car went after hitting the wagon is placed by the several witnesses, except the motorman and conductor, all the way from 10 or 15 feet to as high as 125 to 130 feet. We think the evidence as a whole warranted the jury in believing that the car was run from Clay street north until it struck the wagon of appellee at a high, dangerous and unusual rate of speed, one that he was not required to anticipate, and also in finding that appellee was at the time in question in the exercise of due care for his own safety.

It is next urged that the damages are excessive. Appellee fell on the wagon tongue or pole. He was considerably bruised all over, but was particularly in-injured in the right hip. While there was no complete fracture of the bones, the evidence tends to show an injury to the upper end of the femur that left it in an abnormal condition and caused appellee to be lame up to the time of the trial. He was taken from the place

of the accident to a hospital, placed in a plaster cast, and kept in one for three or four weeks. He suffered much pain in the hip, arm and breast. He staid in the hospital five weeks, was then taken home and was confined to his bed for two weeks more, then walked on two crutches for three months, then with one crutch and one cane, and finally with one cane, which he was still using at the time of the trial, about eighteen months after the injury. There was a thickening of the head of the femur, and also of the innominate bone, and pain in the hip and chest and permanent lameness. While the damages may be ample, they are not so large as to indicate passion or prejudice on the part of the jury or to warrant a reversal of the judgment.

A number of complaints are made by appellant of the rulings of the court on the admission and exclusion of evidence, and the giving and refusal of instructions. We have examined them all carefully and find no reversible error in such rulings. A detailed discussion of all these questions would consume much time and space and could serve no useful purpose.

The judgment of the circuit court, is, therefore affirmed.

*Judgment affirmed.*