The Brunswick and Western Railroad *vs.* Hoover.

1. Where one is killed by a railroad company in running its trains, the presumption of negligence is attached by law to the company, and the *onus* is on it to show all ordinary and reasonable care by its officers and agents, or that the deceased's own negligence was the cause of the death, or that by ordinary care he could have avoided the consequences of the negligence of the company.

2. Where a homicide occurred from the running of a railroad train at a public crossing, near a city and where another railroad track ran along beside that on which the killing occurred, if it appeared that blow-posts were not erected, the whistle was not blown, and the train was not checked, as required by law, the exercise of all ordinary and reasonable care was not shown, so as to rebut the presumption against the railroad.

3. The facts of this case do not show that the deceased caused his own death. If there was any negligence on his part, it was contributory; and the law being fairly and fully given in charge, the verdict of the jury on the subject of negligence, contributory negligence, the degree of each, and the apportionment of damages, or

the withholding any, is conclusive, if approved by the presiding judge, provided there be evidence enough to support the finding.

4. The evidence did not show that the consequences of the negligence of the railroad could have been avoided, and the disaster averted by the use of ordinary care on the part of the deceased.

February 24, 1885.

Railroads. Damages. Negligence. Verdict. New Trial. Before Judge BOWER. Dougherty Superior Court. October Term, 1884.

Reported in the decision.

GOODYEAR & KAY; G. J. WRIGHT; C. B. WOOTEN, for plaintiff in error.

D. A. VASON; L. ARNHEIM; S. J. JONES, for defendant.

JACKSON, Chief Justice.

This action was brought by the widow for the homicide of her husband by the railroad company. The jury found for the plaintiff one thousand and twenty-five dollars. A motion was made for a new trial, on the ground that the verdict was without evidence, and contrary to evidence and to law, and the denial of this motion is the error assigned.

1. When one is killed by a railroad company in running its trains, the presumption of negligence is attached by law to the company, and the *onus* is upon it to show all ordinary and reasonable care by its officers and agents to rebut what the statute law of this state, by the killing alone, makes negligence in them without other proof; or to show that the deceased's own negligence was the cause of the death; or to show that by ordinary care he could have avoided the consequences of the negligence of the company. Code, §§3033, 3034, 2972. This homicide occurred at a public crossing, which deceased was crossing in a wagon driven by another, in which he was lying when it occurred, and the question is, was this presumption of

negligence rebutted in either of the three modes allowed
by the statute?

2. First, did the company's servant, use, or " exercise "
(to emphasize the stronger word of section 3033 of the
Code), "all ordinary and reasonable care and diligence,"
to avoid this catastrophe at this crossing?

The statute is full and positive in respect to the duty of
the company in approaching these crossings. It requires
it to establish blow-posts four hundred yards from the
crossing. None, it appears, were established, at the time
of this killing, at this most important crossing, within a mile
or two of the city of Albany, and near another railroad
track running alongside its track near the crossing. The
statute requires its servants to blow, and continue to blow,
until it reaches the crossing. This was not done. It re-
quires the engineer to check the speed of the train, and
keep checking, so as to have it under such control as to
save life and property at the crossing, should either be in
jeopardy on the public highway where it crosses the rail-
way. This was not done. It is made by the statute crim-
inal in the superintendent not to erect these blow-posts,
and he is subjected to a fine of not less than five hundred
and not more than one thousand dollars, and in the engi-
neer not to blow thus continuously and " check simulta-
neously and keep checking the speed thereof, so as to stop
in time should any person or thing be crossing said track
on said road," under the penalty of fine or imprisonment.
Code, §§708, 709, 710. Not only must all this be done,
but the *onus* is upon the company to show fault in the
injured person, if he was in fault, and his fault caused the
disaster. Code, §711.

Not only, therefore, is it negligence, but negligence of
the grossest and gravest character, not to comply with
these statutory enactments to preserve human life on the
public highway, when that highway crosses the railroad
track; so grave that it is made criminal not to comply
with these enactments. In the *Western and Atlantic*

*Railroad Company vs. Jones*, 65 *Ga.*, 631, even in the case of a horse killed, not at but just beyond the crossing, these provisions of the Code were rigidly enforced by this court, and construed as their letter and spirit require.

So that, so far from the presumption being rebutted by the exercise of all ordinary and reasonable care and diligence, the evidence fastens upon the company's servants criminal negligence, amounting to a misdemeanor, punishable by fine upon the superintendent and fine or imprisonment on the engineer.

3. Was the presumption rebutted or the company relieved by the fact that the deceased's negligence caused his death? We think that the evidence is abundant to show that it was not and to uphold the verdict. No whistle was heard to blow by the driver or the deceased. The driver heard noise as of a train, but thought it was a train on the other railway.* The deceased heard nothing, and believed no train was running near on either road. If the servants of the company had complied with the penal laws requiring of them duties and inflicting punishment for neglect of these duties, the dead, in all human probability, would be now alive, and no widow would have been suing it. If its whistle had been continuously blown and its speed checked, and kept in check, so as to be under control at the crossing, no harm would have been done, but life would have been saved.

So that, even if there had been negligence by deceased or his driver, it would have been contributory, and not the

*The driver of the wagon testified that about fifty or one hundred yards before reaching the crossing, he heard a noise which he thought was that of a running train; that he mentioned it to deceased, who was sitting in the wagon, but thought it was a train on the "Gulf Road," which ran near by; that deceased said he heard nothing, and that, as he had a "skittish" mule, he whipped his team, in order to get out of the way before what he supposed was the "Gulf" train came by; that as his mules got on the track, he saw defendant's train approaching at a very short distance off; that the mules turned to the left and stopped, and the injury occurred ; that there was a curve in the road near the crossing. The evidence for defendant went to show that about 440 yards from the crossing the whistle was blown, and there was some slacking in the speed, and that the track was straight for 290 yards before reaching the crossing, and the head-light could be seen. As to the speed and the sounding of any whistle at all, there was some conflict.

sole cause and real cause of the disaster. In our state, contributory negligence reduces the amount, but does not bar the recovery of damages. Code, §3034. There is no exception to the charge. The whole law was fairly and fully given to the jury, and upon the facts their judgment on negligence, contributory negligence, and the degree of each, and the apportionment of damages, or the withholding any, all being within their province, is conclusive, if approved by the presiding judge, upon the single condition that there be enough evidence to support the finding. In this case, it is ample.

4. Could the disaster have been averted by ordinary care by the deceased, and the consequences of this gross negligence by the servants of the company have been avoided by him by ordinary care? It could not have been. The engine was, within seconds of time, upon him —driver, team and wagon, before danger was apparent; and it was thus within those seconds of imminent disaster and death by reason of the criminal negligence of failing to blow and keep blowing, and of failing to check and keep checking. The train, at a speed, an unchecked speed, of eighteen to twenty miles an hour, was within fifty feet of them, when the consequences of this negligence of the agents of the company were impending and imminent, too near for the most extreme, not mere ordinary, care to have avoided them, even if the passage across the track of the road had been even and smooth. But there is proof that a ditch was in the way of easy exit, and that impeded the effort to extricate the party from the impending danger; and that ditch, on or quite contiguous to the crossing for some distance alongside the road-bed, adds an additional item to the negligence of the servants of the company.

The conclusion reached is irresistible that the presiding judge did not abuse, but used with propriety and legally that discretion with which the law invests him, to deny the plaintiff in error a new trial.

Judgment affirmed.