Hillsborough, }
  Dec. 1, 1914. }

### JOHN DOODY *v.* BOSTON & MAINE RAILROAD.

The fact that a highway traveler drove upon a grade crossing without looking up
    and down the track to discover an approaching train is not conclusive evidence
    of a want of due care on his part.
Whether a highway traveler acted with ordinary care and prudence in halting
    a load of logs where he knew it might be struck by a passing train and in
    relying solely upon a locomotive whistle to warn him of impending danger is a
    question of fact for the jury.

CASE, for personal injuries caused by the defendants' negligence.
Trial by jury and verdict for the plaintiff. Transferred from the
May term, 1914, of the superior court by *Pike*, C. J., on the defend-
ants' exceptions to the denial of motions for a nonsuit and the
direction of a verdict.

*Doyle & Lucier*, for the plaintiff.

*Charles J. Hamblett, Marshall D. Cobleigh, Samuel J. Dearborn*,
and *Thorp & Abbott*, for the defendants.

WALKER, J. Upon the first trial of this case it was transferred to
this court and a decision was rendered overruling the defendant's
motion for a directed verdict, but setting it aside on the ground of
misconduct of the jurymen in reaching a verdict for the plaintiff.
*Doody* v. *Railroad*, *ante*, 161. It was held that the evidence of the
defendant's negligence and the plaintiff's care under the circum-
stances was sufficient to sustain a verdict in his favor. The present
transfer of the case brings up the record of a second trial, resulting
in a verdict for the plaintiff, upon the defendant's exceptions to
the denial of its motions for a nonsuit and a directed verdict. It is
claimed by the defendant that the evidence now produced by the
plaintiff upon the issue of contributory negligence so far varies
from that produced on the first trial and is so far material as to
necessitate a holding that reasonable men could not find that the
plaintiff was in the exercise of ordinary care at the time of the col-
lision. But the particulars in which it is claimed the evidence is
different, singly or collectively, do not sustain that contention.
    It is said that the plaintiff admitted he did not look up or down the

track when he drove his team over the crossing; but the court cannot hold as a matter of law that it was his duty to take that precaution, (1) because it appears he stopped his team when near the crossing, listened for a train but heard nothing, looked at his watch which indicated 11:30 o'clock, and concluded that the regular train which was due at that point at about 11 o'clock had passed; (2) because he testified that he relied upon the custom of the defendant to give the usual whistling signal some eighty rods from the crossing; and (3) because it does not appear that if he had looked up the track when he was in the act of passing over the crossing he would have seen the train. It was not a breach of his duty to omit to do what would have given him no warning of danger if he had done it. *Lyman* v. *Railroad*, 66 N. H. 200, 203. The jury were amply warranted in finding that he was justified in relying for his protection upon the whistling signal which his evidence tended to show was not given. "It was the duty of the defendants to give two long and two short whistles when their locomotive was eighty rods distant from the crossing. P. S., c. 159, s. 6. Cate was justified in relying upon a performance of this duty. *State* v. *Railroad*, 58 N. H. 408, 410; *Nutter* v. *Railroad*, 60 N. H. 483. Whether he was at liberty to rely upon it altogether is a question of fact and not of law. *Mitchell* v. *Railroad*, 68 N. H. 96, 116." *Smith* v. *Railroad*, 70 N. H. 53, 83; *Stearns* v. *Railroad*, 75 N. H. 40.

But it is argued that the plaintiff knew he stopped his team in a dangerous position and should have been more vigilant in watching for the train; in other words, that he was negligent in stopping his team in a place where a passing train might strike the end of his load and upset it. His testimony is, however, in effect that it was a dangerous place if trains were allowed to run at the rate of forty or fifty miles an hour, as this train was running, without giving the whistling signal. He did not regard it a dangerous place if that signal was given. If he had heard such a signal, he would have started his horses up and avoided the collision. The question is not whether some men would have been more cautious than he was and not relied entirely upon the whistling signal, but whether he acted under the circumstances with ordinary care and prudence. That question may be a debatable one, but it is for the jury to answer and not for the court to decide. See cases cited above. The facts that he had been teaming over this crossing several times a day for some weeks, that he knew a train was due there at 11 o'clock, that he had been warned by the whistles when trains were approach-

ing, that on the day of the accident he reached the crossing at 11:30, stopped and listened for any train that might be coming, concluded the regular train had passed, and assumed it was safe to cross, that if a train should be coming he would hear the whistle in ample time to avoid a collision, that in order to put the brake-chain on the runner it was necessary to stop his sled very near the track, and that he received no warning of the train until it was upon the crossing, made the case a proper one for the consideration of the jury relative to his care.

The suggestion that it was a very cold day, with the wind blowing strongly against the train, is not of much importance upon the question of law raised by the defendant's exceptions. The case does not differ materially from that presented at the first hearing.

*Exceptions overruled.*

All concurred.