GUS DOMBRENOS, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

**RAILROADS:** Accidents at Crossings—Jury Issue on Contributory Negligence. The court may not, *as a matter of law*, base a finding

of contributory negligence on the *one* fact that the injured party, in approaching and going upon a public railway crossing, did not have his vehicle under such control as would enable him to avoid all dangers which might there confront him, when the record reveals the further legally material and relevant fact that, unknown to the injured party, the defendant railway company at the same time approached and went upon the said crossing with its train at an unlawful rate of speed, and without the legally required warning signals.

*Appeal from Polk District Court.*—GEORGE WILSON, Judge.

NOVEMBER 15, 1919.

OPINION ON REHEARING DECEMBER 15, 1922.

ACTION at law, to recover damages for personal injury. There was a directed verdict for the defendant, and plaintiff appeals. On the first submission of the appeal to this court, an opinion was filed reversing the ruling and judgment of the trial court, and granting a new trial. See 174 N. W. 596. A petition for rehearing was granted, and cause reargued by counsel.— *Reversed and remanded.*

*Cosson & Francis,* for appellant.

*J. G. Gamble* and *R. L. Read,* for appellee.

WEAVER, J.—West First Street in the city of Des Moines extends north and south along the river front. On the west side of the street, the city is quite compactly built up with stores, shops, and structures of various kinds. Threading their way through the streets and alleys of this section, the lines of several different railroads approach from the west across First Street at grade, and thence east over the bridges which span the river. The defendant's track was the one farthest to the south. Plaintiff, driving a Cadillac omnibus, was driving his car southward on First Street, to obtain an item of repair at a shop immediately south of defendant's track. For one moving from that direction, the view to the west was obstructed by a building or

buildings adjacent to the street.  As he approached, a watch-
man at the crossing of a parallel track north of the defendant's
track signaled him forward.  He could not see to the west along
defendant's line until his car had proceeded far enough for him,
in the driver's seat, to look past the building in that direction.
The distance between the building, with its "lean-to" addition,
and the defendant's track was 35 (some say 37) feet—making
the safety zone between the driver's seat and the overhang of
a passing locomotive probably not more than 25 feet.  The evi-
dence was such as would justify the jury in finding that, in
approaching this point, plaintiff looked and listened for crossing
signals, and none was in fact given or sounded.  There was in
force, at the time, a city ordinance limiting the lawful speed
of railway trains to 6 miles per hour, and requiring the use of
the usual signals by whistle and bell.  The auto car was moving
about 8 to 10 miles per hour, when, reaching the point of ob-
servation here mentioned, plaintiff discovered a train coming
from the west at a rapid rate, and about 25 steps away.  The
speed of the train is estimated at 20 miles per hour.  Respond-
ing to the situation thus presented, facing the evident certainty
of a collision if he went ahead or attempted to come to a dead
stop, he immediately swung the car sharply to the left.  This
movement nearly succeeded; but as he turned, the projecting
cylinder of the locomotive collided with the right wheel of the
car, causing the injuries complained of.  In this action for re-
covery of damages so sustained, the plaintiff charges defendant
with negligence, in that it failed to provide a watchman or
guard at the crossing, or any sign or warning to persons using
the street, and further that the train by which the injury was
done was being operated at an unlawfully high rate of speed,
and without use of any warning signal by whistle or bell.  The
answer is a general denial, and an allegation of the plaintiff's
contributory negligence.  At the close of the testimony, the
trial court directed a verdict for the defendant, on the ground
that the evidence had demonstrated plaintiff's contributory
negligence, as a matter of law.

I.  The question thus presented is the familiar one,
whether, admitting for this purpose the truth of the showing
made by the plaintiff, and giving him the benefit of the most

favorable inferences and conclusions which may fairly be drawn from the testimony, he was entitled to have his case submitted to the jury. If he was, then the trial court erred in directing a verdict. The appellee' in its brief simplifies the issue materially by conceding that the record is such that the jury could properly have found that the train was being operated at an unlawful rate of speed, and that it failed to give warning of its approach by sounding whistle or bell. It further concedes that plaintiff could not have discovered the approach of the train before reaching the point where he did discover it, and that he was not negligent in trying to avoid the collision by swinging his car to the east, and concedes that he "did do the best he could do, after he passed the south line of the buildings," but plants its justification of the directed verdict on the single proposition that plaintiff must be held chargeable with contributory negligence *as a matter of law,* because he did not have the movement of his car under such control that he *could* have stopped it in time to avoid the collision after he discovered the approach of the train. In reaching this conclusion, counsel repel or discreetly avoid a very important, if not essential, feature of the case by the sweeping declaration that:

"There is no question here as to the extent upon which plaintiff might reasonably rely upon the company's observance of the ordinance."

If this be true, the road to an affirmance of the trial court's ruling is easy. But the proposition so advanced is certainly not the law. To entitle him to recover damages resulting from the company's confessed negligence, plaintiff is not bound to show that he exercised perfect care. It is enough if, from his showing, fair-minded jurors could fairly find that he acted with reasonable care,—such care as might reasonably be expected from a man of ordinary prudence, under the given circumstances. To use a phrase recently employed by this court in a similar case: "Super-care is not required." *Haven v. Chicago, M. & St. P. R. Co.,* 188 Iowa 1266. Perhaps in no recent case has this rule been more clearly stated or more happily illustrated than in *Dusold v. Chicago G. W. R. Co.,* 162 Iowa 441, to which we will later make more extended reference. Whether a person exposed to peril has used reasonable care de-

pends upon the circumstances by which he is surrounded, the time, the place, the nature of the danger, and all other matters and things naturally or fairly tending to influence his conduct or affect his judgment, as a person of ordinary capacity and understanding; and in the very nature of things, unless we are to ignore the universally recognized rule, and judicially enact a new law of negligence, the question so presented is for the jury. That, under all ordinary circumstances, negligence is a question for the jury, is too fundamental and familiar to require argument or citation of authorities. The only exception to this rule is where the undisputed or conceded facts ''are such that all reasonable men must draw the same conclusion from them.'' It is *not enough that the judge presiding at the trial may believe that the plaintiff was negligent, or that, if serving as a juror in the case, he might properly find for the defendant upon the issue of contributory negligence,—he cannot rightfully control or direct the verdict if other fair-minded, intelligent persons, considering the same evidence, may believe that the plaintiff's conduct was not inconsistent with the rule of reasonable care.* Grand Trunk R. Co. v. Ives, 144 U. S. 408.

II. It is well at the outset to recall some of the familiar basic principles which govern the respective rights of the railway company and the general public, within the scope of which all cases involving accidents at public crossings are to be considered. Of the multitude of cases found in the books, a leading precedent is *Continental Impr. Co. v. Stead,* 95 U. S. 161, where the subject is discussed, and the opinion written by Mr. Justice Bradley is concurred in by the entire court. In that case, the plaintiff was struck by defendant's train on a highway crossing. He was driving his vehicle to the east across the track at right angles. The crossing was obscured by various obstacles to an extended view. As he approached the crossing, he looked south, the direction from which the next scheduled train was expected, but did not look north; his hearing was somewhat impaired; he did not stop; but, driving ahead, he was caught on the crossing by a special train from the north. There, as here, the defense relied largely upon its claim that plaintiff was chargeable with contributory negligence as a matter of law; but the court charged the jury that the obligations, rights, and duties of rail-

roads and travelers upon highway crossings are mutual and reciprocal, and that no greater degree of care is required ·of the one than of the other. This instruction was challenged by the company; but the Supreme.Court, approving it, said:

"We think it is in accordance with well settled law and good sense."

Then, after stating the general rule that, in the use of the crossing, the railway train is entitled to ·preference of right of way over the highway traveler, the court adds:

"But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass. * * * Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on many circumstances. It cannot be such, if the speed of the train be so great as to render it unavailing."

With special reference to the question of .contributory negligence, the court, after stating the duty of the highway traveler to "exercise ordinary care and diligence to ascertain. whether a train is approaching," and that failure in this respect, if contributing to the injury, will defeat the right to recover damages, adds:

"The *mistake of the defendant's counsel consists in seeking to impose upon the wagon too exclusively the duty of avoiding collision, and to relieve the train too entirely from responsibility in the matter.* Railway companies cannot expect this immunity so long as their tracks cross the highways of the country upon the same level. The people have the same. right to travel on the ordinary highways as the railway companies have to run trains on the railroads."

The mistake of counsel which the court there corrects is, in principle, the mistake which permeates the argument of the appellee in the instant case. As still further appropriate to this discussion, we quote from the cited case the language of the Supreme Court, sustaining the trial court's refusal of a request by the defendant for an instruction defining the plaintiff's duty of care. It is there said that the request "states the duty of persons approaching a railroad with wagons and teams in a more absolute and unqualified form than we think admissible. It states such duty with the *rigidity of a statute, making no al-*

*lowance for modifying circumstances* or for accidental diversion of the attention, to which the most prudent and careful are sometimes subject; and *assuming, in effect, that the duty of avoiding collision lies wholly, or nearly so, on one side.*"

This is the precise effect of the appellee's assumption in the present case.   The sole proposition on which the defense relies is that the fact that plaintiff was not able to stop his car in the single second of time after discovering the on-coming train, and thus avoid the collision, conclusively and as a matter of law establishes his contributory negligence, and this, too, without making any "allowance for the modifying circumstances" which Justice Bradley says are to be considered in such cases.

Reduced to brief, practical terms, the precedent which appellee asks us to establish permits it to say to the plaintiff:

"True, we were violating a valid ordinance; true that we were shooting our train through a populous city and over its streets at perilous speed, without warning or signal, and without watchman or guard or flagman; and it is also true that you were rightfully on the street and (subject to our precedence in use of the right of way) your right to use the street was equal to our right thereon, and, had our train been moving within its lawful limit of speed, your attempt to avoid the collision would have been successful; nevertheless, you were bound, as a matter of law, to anticipate the danger created by our negligence, and your failure so to do permits us to run our train over you, without liability to answer therefor."

That this assumption is as unsound in law as in morals is easily demonstrable.

III.   It is wholly aside from the question in this case to repeat the rule which nobody denies, that a railway crossing is a place of danger; that a highway traveler is in duty bound to recognize such fact; and that, in exercising his right of using such crossing, he is bound to exercise reasonable care to discover approaching trains, and avoid injury therefrom.   All this is admitted.   But the inquiry remains, What *is* reasonable care in this respect?   Appellee argues with much earnestness that, as a matter of law, reasonable care required plaintiff to have such control of his car as would enable him to stop it, no matter

what the circumstances might be, and without any reference to the reckless and unlawful operation of the train.   In other words, as we have already said, the contention is, in effect, that he was bound to anticipate danger arising from the company's negligence, and to protect himself against it by stopping his car.   It would seem that this question has been decided otherwise so often that the arraying of authorities thereon might well be regarded unnecessary; but that we may not seem to ignore the appellee's position, we extend this opinion for a recurrence to some of the rules and principles which have characterized the law of negligence since the time "whence the memory of man runneth not to the contrary."

The case of *Grand Trunk R. Co. v. Ives,* 144 U. S. 408, is, in many essential features, quite parallel with the one at bar. There, a traveler in the city of Detroit drove along a street which was crossed by several parallel lines of railway.   There, as here, was a city ordinance limiting the speed of trains to six miles per hour.   Arriving at the crossing, the driver stopped, to allow the passing of a train on one of the roads, and then went forward, and was struck by a train moving in the other direction on another track.   There, as here, the plaintiff's evidence tended to show that the train was being operated at from 20 to 40 miles per hour, and that no danger signals were sounded by whistle or bell, nor was the crossing guarded by a flagman. In submitting the case to the jury, the trial court stated the law as follows:

"You fix the standard for reasonable, prudent, and cautious men, under the circumstances of the case as you find them, according to your judgment and experience of what that class of men do under these circumstances, and then test the conduct involved and try it by that standard; and *neither the judge who tries the case nor any other person can supply you with the criterion of judgment* by any opinion he may have on that subject."

Approving this instruction, the Supreme Court, speaking by Justice Lamar, said:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute

ordinary care, under any and all circumstances. * * * The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the *special circumstances and surroundings of each particular case*, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury."

In the same case, defendant excepted to the court's refusal to charge the jury that, if the deceased had a clear view of defendant's tracks at a point 15 or 18 feet from the track, and failed to stop, but went forward with his back to the approaching train, he was chargeable with contributory negligence. This was refused because "it is too much upon the weight of the evidence, and *confines the jury to the particular circumstance narrated, without notice of others that they may think important."* The court there says:

"This reason is a sound one. In determining whether the deceased was guilty of contributory negligence, the jury were *bound to consider all* the facts and circumstances bearing upon that question, and *not select one particular prominent fact or circumstance as controlling the case, to the exclusion of all the others."*

And here we may repeat that the proposition affirmed by the appellee is clearly open to the same condemnation, in that it selects one particular fact as controlling the case, to the exclusion of all others. While appellant does not contend, nor does any court hold, that the traveler approaching a crossing may rely absolutely upon the assumption that the railway company will obey the law with respect to the safety of the crossing or operation of its trains, it is universally held that, although he is not thereby excused from the duty to exercise reasonable care to look out for his own safety, he may place *some* degree of reliance on the assumption that the company will obey the law, and not recklessly expose him to danger; and his right to so assume is always a very material fact in considering what is reasonable care on his part. Upon this subject, our own cases

are numerous and directly in point. We have approved an instruction to the jury that "all men have a right to expect that others will not violate the law." This was said in a crossing case, and in overruling the proposition on which the defendant here relies, we further said:

"It seems reasonably probable that, if the defendant's train had been moving at a lawful rate of speed, the person in charge of the plaintiff's stock would have been able, by the efforts made by him, to prevent the injury; that his conduct would have been consistent with due care on the hypothesis that he supposed the train to be moving at a lawful rate of speed. This he had a right to assume, until the contrary appeared." *Correll v. B. C. R. & M. R. Co.*, 38 Iowa 120.

Applying that rule to the case at bar, it may be said, in the same language, that:

"If the defendant's train had been moving at a lawful rate of speed, plaintiff would have been able, by the efforts made by him, to prevent the injury."

It is conceded in argument that plaintiff was not negligent in swinging his car to the left. In so doing, he succeeded in keeping off the track, though not quite far enough to avoid contact with the overhang of the locomotive. Had the train been moving within the lawful limit of speed, there would have been no collision. This proposition we have reaffirmed in *Moore v. Chicago, St. P. & K. C. R. Co.*, 102 Iowa 595; *Case v. Chicago G. W. R. Co.*, 147 Iowa 747, 751; *Cummings v. Chicago, R. I. & P. R. Co.*, 114 Iowa 85, 88; *Doherty v. Des Moines City R. Co.*, 144 Iowa 26, 35; *Dusold v. Chicago G. W. R. Co.*, 162 Iowa 441; *Perjue v. Citizens Elec. Lt. & G. Co.*, 131 Iowa 710; *Dow v. Des Moines City R. Co.*, 148 Iowa 429, 445; *Ward v. Marshalltown L. P. & R. Co.*, 132 Iowa 578; *Platter v. Minneapolis & St. L. R. Co.*, 162 Iowa 142; *Gray v. Chicago, R. I. & P. R. Co.*, 160 Iowa 1, 11; *Hartman v. Chicago G. W. R. Co.*, 132 Iowa 582; *Wolfe v. Chicago G. W. R. Co.*, 166 Iowa 506; *Davitt v. Chicago G. W. R. Co.*, 164 Iowa 216; *Burnett v. Chicago, M. & St. P. R. Co.*, 172 Iowa 704, 714; *Barrett v. Chicago, M. & St. P. R. Co.*, 190 Iowa 509, 525; *Marnan v. Chicago, R. I. & P. R. Co.*, 156 Iowa 457, 462; *Rupener v. Cedar Rapids & I. C. R. & L. Co.*, 178 Iowa 615, 618; *Willfong v. Omaha & St. L. R. Co.*, 116 Iowa

548, 554.  In all these and in still other cases, the right of the highway traveler to the benefit of protective rules, statutes, and ordinances is upheld, in language too clear, definite, and certain to leave any room for doubt, not as a shield from the consequences of his failure to exercise reasonable care, but *as a material element or factor to be considered by the jury in determining whether the traveler acted with the care of an ordinarily prudent person.*  Such is the law in every jurisdiction of this country, unless we except the state of Pennsylvania, which sustains a rule which we have distinctly repudiated.  For example, the Illinois court lays down the rule that:

"*Anticipation of negligence in others is not a duty* which the law imposes.  On the contrary, it is a presumption of law that every person will perform the duty enjoined by law or imposed by contract.  Where, for instance, the traveler knows that the law requires a railroad company to ring a bell or sound a whistle, he has a right to rely upon the performance of such duty by the company."  *Chicago C. R. Co. v. Fennimore,* 199 Ill. 9 (64 N. E. 985).

See, also, 2 Jaggard on Torts 970, and 1 Shearman & Redfield on Negligence (6th Ed.), Section 92.

In *Henry v. Cleveland, C. C. & St. L. R. Co.,* 236 Ill. 219 (86 N. E. 231), the Illinois court had to deal with a case quite like the one now in hand.  There, the plaintiff undertook to drive over a street crossing, and was struck by a train running at a speed in excess of an ordinance limit.  He did not stop his team, nor did he look in either direction.  Just as he reached the track, he discovered the train bearing down upon him.  Thereupon, as did the plaintiff in this case, he sought to avoid the collision by turning to the left, but was caught and injured.  The court there said:

"*It cannot be said, we think, therefore, as a matter of law,* that he was guilty of such contributory negligence in driving upon the appellant's track as to defeat a right of recovery. * * * Undoubtedly a failure to look or listen, especially where it affirmatively appears that looking or listening might have enabled the party exposed to injury to see the train and thus avoid being injured, is evidence tending to show negligence. But they are *not conclusive evidence,* so that a charge of negli-

gence can be predicated upon them as a matter of law. There may be various modifying circumstances excusing the party from looking or listening, and that being the case, a mere failure to look or listen cannot, *as a legal conclusion,* be pronounced negligence *per se.*"

This application of the rule, the court there emphasizes by saying that the injured traveler "had the right to assume that appellant would obey the law and give him warning of the approaching train by proper signals."

To the same effect is *Payne v. Burnett,* (Ind. App.) 133 N. E. 147; *Southern R. Co. v. Aldridge's Admr.,* 101 Va. 142 (43 S. E. 333); *Hutchinson v. Missouri P. R. Co.,* 161 Mo. 246 (84 Am. St. 710); *Nichols v. Chicago, B. & Q. R. Co.,* 44 Colo. 501 (98 Pac. 808); *Morgan v. Pere Marquette R. Co.,* 162 Mich. 573 (127 N. W. 683); *Stearns v. Boston & M. R. Co.,* 75 N. H. 40 (71 Atl. 21); *Tennessee C. R. Co. v. Gilbert,* 131 Tenn. 201 (174 S. W. 812); *Texas & P. R. Co. v. Cody,* 166 U. S. 606, 615; *Baltimore & O. R. Co. v. Griffith,* 159 U. S. 603; *Wilson v. Central R. Co.,* 88 N. J. L. 342 (96 Atl. 79); *Doody v. Boston & M. R. Co.,* 77 N. H. 417 (92 Atl. 801); Same case, 77 N. H. 161 (89 Atl. 487); *Texas & N. O. R. Co. v. Diaz,* (Tex.) 234 S. W. 919; *Texas & N. O. R. Co. v. Harrington,* (Tex.) 235 S. W. 188, 192; *Omaha, N. & B. H. R. Co. v. O'Donnell,* 22 Neb. 475 (35 N. W. 235); *Thomas v. Chicago & G. T. R. Co.,* 86 Mich. 496 (49 N. W. 547); *Staal v. Grand Rapids & I. R. Co.,* 57 Mich. 239 (23 N. W. 795); *Johnson v. Chicago, R. I. & P. R. Co.,* 77 Mo. 546; *Brunswick & W. R. Co. v. Hoover,* 74 Ga. 426; *Hooper v. Boston & M. R. Co.,* 81 Me. 260 (17 Atl. 64); *Kennayde v. Pacific R. Co.,* 45 Mo. 255; *Weller v. Chicago, M. & St. P. R. Co.,* 120 Mo. 635 (23 S. W. 1061); *Bunting v. Central P. R. Co.,* 14 Nev. 351; *Evans v. Concord R. Corp.,* 66 N. H. 194 (21 Atl. 105); *Ernst v. Hudson River R. Co.,* 35 N. Y. 9; *Atlanta & W. P. R. Co. v. Lovelace,* 121 Ga. 487 (49 S. E. 607).

Thus it is established beyond all cavil that, upon the question of contributory negligence of the traveler injured in a railway crossing accident, the fact that he may have been deceived or misled by the failure of the company to obey the law established for his protection is proper to be considered upon the question whether he exercised reasonable care; and this is

a question for the jury.  Counsel for appellee seem to assume that to reverse the judgment appealed from is to hold that plaintiff was not negligent, and to hold that he was not bound to exercise care for his own safety.  Such is not our holding.  The extent of the proposition which we affirm is simply that, while the plaintiff is not exempted from the rule which holds him to the exercise of reasonable care, the question whether his conduct measures up to that standard is one of fact for the jury, and not one to be arbitrarily disposed of by the court.

As illustrating the universality of the rule and its application to this case, we venture to quote a few concrete examples of its recognition by the courts.  Even in Pennsylvania, where the traveler on the highway is held by an inflexible rule (not recognized in other jurisdictions) to *stop,* look, and listen, before venturing upon a crossing, it has been discussed in language so clear and in reasoning so cogent that we cannot forbear quoting it.  There, the traveler was struck upon a crossing where the warning signal had not been given; and although the train was visible for a distance of more than 600 feet, the question of contributory negligence was left to the jury.  *Pennsylvania R. Co. v. Ogier,* 35 Pa. St. 60.  The court there says:

"If there was no notice by blowing the whistle, a thing required to be done before reaching the point, and usually done, a traveler accustomed to expect this would not only not be so likely to look out for danger or be in such a preparedness to avoid it as he otherwise might have been, and this without any culpable negligence on his part.  For if, by the negligence or omission of those in charge of the train, his vigilance was allayed, *they are not at liberty to impute the consequence of their acts to his want of vigilance, a quality of which they deprived him.*  If their acts brought him within the boundaries of peril, they must answer for the results of that condition.  If, therefore, he had a right to expect to hear the whistle sounded at a sufficient distance from the crossing, and did not, it is evident a different degree of care or vigilance might follow.  Care is, undoubtedly, a relative term, or rather, conveys a relative idea as to the degree necessary to be observed under circumstances.  It is different, certainly, when there is reason to apprehend danger, from that degree to be exercised where it is not to be ap-

prehended. Here, it may have made a great difference. It seems to me that, *if the evidence had satisfied the jury* that the whistle had been sounded at the usual place, and the cars had been running at the usual speed, the defendants would not, as the case stood, have been guilty of negligence. But the fault of negligence on one or the other side *depended much on this fact. It was in view of this controverted point that the court were bound to leave the question of negligence on part of the deceased to the jury,* against the prayer for instruction to rule it against the plaintiff as a matter of law. We think they did right in doing so.''

To the same point, it has been recently said by this court in *Dusold v. Chicago G. W. R. Co.,* supra:

''While a railroad crossing suggests danger, the absence of danger signals, the absence of that which usually and ordinarily exists, which suggests danger, may have the effect of lulling the mind into a sense of security. * * * It is true that the absence of statutory signals does not relieve a party attempting to cross a railway track from the duty of vigilantly using all his senses to ascertain if there is danger in crossing; but this fact *is proper to be considered by the jury, with all the other facts, in determining whether or not he exercised reasonable care and caution for his own safety.*''

And again, in the same case, we said:

''It is clearly true that, if the want of vigilance on the part of one injured *was provoked and induced by the omission of a duty* which the other party owed to the party injured, and was the inducing cause of that want of vigilance, the other party ought not to be heard to complain. At least, it *is a factor to be considered* in determining the question of want of vigilance. Or, in other words, if the party charged with contributory negligence was led into the omission of an act of vigilance which might have avoided the injury, by the omission of the complaining party to discharge some positive duty which he owed to the injured person, the performance of which would have suggested greater vigilance, and the want of which tended to lull him into the thought of security, the other party ought not to be permitted to profit thereby.''

To the same effect, see *Wolfe v. Chicago G. W. R. Co.,*

supra. In point, also, is the holding by this court, speaking by Stevens, J., in *Brose v. Chicago G. W. R. Co.*, 185 Iowa 867, where the traveler was misled by the failure of an automatic alarm bell to sound. There we said:

"The jury had a right to take this fact into consideration, in deciding whether plaintiff exercised ordinary care in attempting to go upon the crossing."

Says the Colorado court:

"The law *does not hold it imprudent in anyone to act upon the assumption that another, in his conduct, will act in accordance with the rights and duties of both.* A railroad company cannot impute a want of vigilance to one injured by its own negligence *if that very want of vigilance is the consequence of an omission of duty on its part.*" *Nichols v. Chicago, B. & Q. R. Co.,* supra.

In *Wilson v. New York, N. H. & H. R. Co.*, 18 R. I. 491 (29 Atl. 258), the Rhode Island court states it to be the doctrine of all the courts, with perhaps the exception of Pennsylvania, that the omission by the railway company to observe its statutory duties respecting the use of crossings is "an implied assurance that no train or engine is approaching the crossing with intent to cross the street, upon which travelers on the street have a right to rely, and that, if a traveler on the street be injured while crossing the railroad in such circumstances, *the question whether he was guilty of contributory negligence is for the jury.*" See, also, *Glushing v. Sharp*, 96 N. Y. 678, and *Palmer v. New York C. & H. R. R. Co.*, 112 N. Y. 234 (19 N. E. 678), where it is said that the statutes requiring the giving of signals cannot be disregarded, and the company then be allowed to say "that the traveler should not be influenced by these omissions." In *Hutchinson v. Missouri P. R. Co.*, supra, the Missouri court, referring to a city ordinance regulating the speed of trains, said that the fact of such ordinance might enter into plaintiff's calculation, "unless she had reason to apprehend the train was moving in violation of the ordinance, and that that made a question for the jury." In an English case, *Directors, etc., of North Eastern R. Co. v. Wanless*, L. R. 7 H. L. 12, decided by the House of Lords, where the railway company had negligently failed to close its crossing gate, and it was urged that the plain-

tiff was chargeable with contributory negligence, it was said by the Lord Chancellor that the open gates "amounted to a statement and a notice to the public that the line at that time was safe for crossing, and that any person who, under those circumstances, went inside the gates with the view of crossing the line, might very well have been supposed by a jury to have been influenced by the circumstance that the gates were open," and that this, in connection with all the other incidents of the accident, made it a question for the jury to consider whether he was using ordinary diligence in caring for himself.

Such, indeed, is the united voice of the precedents; and the rule so settled is so clearly in accord with sound reason and an enlightened sense of justice as to be no longer open to question.

The rule for which appellee contends is, in effect, quite identical with the point sought to be made by the defense in *Owens v. Iowa County*, 186 Iowa 415, and in *Kendall v. City of Des Moines*, 183 Iowa 866, where it was insisted that contributory negligence as a matter of law should be predicated upon the fact that the driver of an automobile did not have his car under such control that he could bring it to a standstill in the distance within which he could easily see objects or depressions in the highway ahead of him. This contention we overruled, and distinctly refused to follow the lead of one or two other courts which had apparently so held. It was our view then, as it is now, that, under the old and settled rule, the question was for the jury, which could take into consideration all the circumstances surrounding the accident, and therefrom say whether the plaintiff was, at the time, in the exercise of reasonable care. We have recently repeated this ruling in *Spiker v. City of Ottumwa*, 193 Iowa 844. There is no valid reason for creating a more stringent rule in actions predicated on alleged negligence of railway companies than where negligence is charged against counties or cities. Again, the duty of the driver of a car to have the same under control does not necessarily imply a control which enables him to stop instantly, or within any fixed or certain distance. It is a matter of common knowledge and observation that all vehicles, whether self-propelled or moved by animal power, when put in motion, acquire mo-

mentum which, under ordinary circumstances, cannot be over-come instantly. They are, nevertheless, "under control" if the driver has them so in hand that he can bring them to a rest within a reasonable time and distance, dependent on the weight and speed of the vehicle, the condition and grade of the road-way, and the nature of the mechanism, if any, with which his control is exercised. In other words, "reasonable" care, "rea-sonable" speed, "reasonable" time, and "reasonable" control are variable factors, the value or importance of which is or may be dependent on what the Supreme Court of the United States calls "modifying circumstances;" and hence it becomes a ques-tion of fact for the jury, and not of law for the court. Says Mr. Justice Lamar, in the *Ives* case, as already noted:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary. care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative sig-nificance, and cannot be arbitrarily defined."

In other words, while the court may state in abstract terms what is meant by reasonable care and prudence, it is for the jury to say whether the act or omission under consideration is, under all the circumstances, consistent with that standard. It is not within the province of this court to establish a rule by which any specific act or omission shall constitute negligence as a mat-ter of law, without any consideration of the circumstances attending and surrounding it. To adapt the language of Mr. Justice Bradley in the *Stead* case, 95 U. S. 161, the mistake of defendant's counsel consists in seeking to impose upon the driver of the car too exclusively the duty of avoiding the collision, and to relieve the railway too entirely from responsibility in the matter. And such would be the effect of sustaining the defend-ant's position in this case. If we proclaim the rule that every driver approaching a crossing must stop his car, or have it under such control that he can stop it in time to avoid a collision, at the peril of being held negligent as a matter of law, without consideration of the circumstances which have led him into the place of danger, he will thereby be compelled to become his own

insurer in every case of collision, without regard to the company's negligence, or to other modifying circumstances; and the statutes and ordinances and rules of the common law, intended for his protection, will be rendered wholly nugatory.

This opinion has been prolonged to perhaps a wearisome length; but to the mind of the writer, it has been justified by the vigorous and determined efforts of eminent counsel in this and other cases of its class to restate the law and engraft upon it an arbitrary rule by which the right of a party to the verdict of a jury upon a vital question of fact shall be extinguished. It is not the province of the court to enter the field of legislation, and create arbitrary rules having the force and effect of law, either narrowing or enlarging the rights of litigants, in disregard of the rules and principles which have had universal judicial approval and direct and implied legislative recognition from time immemorial. If the time has come when other rights should be created, of either the railway on the one hand or of the public on the other, it should be sought through the lawmaking department of our government, and not by an unauthorized assumption of judicial power.

In concluding, we repeat, for the sake of emphasis, that we express no opinion whatever as to whether the plaintiff in this case was or was not chargeable with contributory negligence. We simply hold that the case as made by the record is sufficient to take that question to the jury.

For the error of the trial court in directing a verdict, the judgment below is reversed, and cause remanded for a new trial.—*Reversed and remanded.*

Arthur, J., concurs.

Stevens, C. J. (specially concurring.) I concur in the result reached in the foregoing opinion upon the following ground only. According to the testimony of appellant and a companion who was with him, the car was traveling at a moderate rate of speed, and the attempt made by him to avoid a collision was very nearly successful. He turned the bus in the direction the train was going, and the side of the automobile collided with the left side of the engine. The morning was sloppy, and it is not improbable that appellant's car skidded, to some extent.

According to his testimony, he saw the approaching train immediately after he passed beyond the brick building, and instantly turned the automobile to the left, for the purpose of avoiding a collision. He was not bound to drive at such a rate of speed, when approaching the crossing, or to have his car under such control, as to preclude the possibility of a collision. He could not exercise infallible judgment. The question, upon the whole record, is whether, in approaching the crossing, and in what he did to prevent the accident after he saw the approaching train, he exercised reasonable care. I agree that this question was for the jury.

EVANS, PRESTON, and FAVILLE, JJ., join in this special concurrence.