F. A. McKERN, Administrator, Appellee, v. WABASH RAILROAD COMPANY, Appellant.

RAILROADS: Accidents at Crossings—Absence of Signals. Failure of those in charge of an engine, on approaching a crossing, to give the required statutory signals, is a circumstance legitimately bearing on the issue of the contributory negligence of an injured party. So held as to a crossing which was unusually obscured by physical conditions.

*Appeal from Appanoose District Court.*—FRANCIS M. HUNTER, Judge.

MARCH 6, 1923.

ACTION at law, to recover damages for the death of Lewis R. McKern, alleged to have been caused by defendant's negligence. Trial was had to a jury, with verdict and judgment for plaintiff.—*Affirmed.*

*Porter & Greenleaf* and *T. G. Fee,* for appellant.

*Wilson & Smith,* for appellee.

WEAVER, J.—Appellant concedes that plaintiff made a case for the jury, in so far as the petition charges negligence in fail-

ing to give proper signal or warning of the train's approach to the crossing on which the deceased was killed, but contends that the latter was chargeable with contributory negligence, as a matter of law. We shall, therefore, confine our discussion to the issue as thus limited.

At the place in question, the natural surface of the ground is somewhat rough and uneven. The crossing is in a cut, both track and highway being lower than the natural contour of the surface. The embankment of the cut is about ten feet higher than the track, and the shoulder of this bank is crowned by a growth of weeds within the right of way, and of weeds and growing corn outside. To one approaching the crossing along the highway as did the deceased, the railway was concealed from view until within some 70 or 80 feet of the track, from which point only about 150 feet of the track was in sight. In the early evening of the day in question, the deceased, a young, unmarried man, was driving a small, single-seated, low-hung Saxon roadster along this highway, in the direction of the crossing. When within about two and a half miles of the crossing, he was overtaken by two other young men, Dotson and Potts, driving a larger car. At the sound of their horn, deceased allowed them to take the lead. From this point until the instant of the collision on the crossing, no living witness undertakes to say what, if any, care or precaution was taken by deceased in approaching the scene of the accident. Neither Potts nor Dotson looked back until after their own narrow escape, to which we shall soon refer; the engineer upon defendant's locomotive did not see the deceased at all until he was struck; and the fireman saw him only for an instant, which he estimated at about two seconds. This witness estimates the speed of the train at 35 to 40 miles per hour. Dotson and Potts estimate their own speed in approaching the crossing at 15 miles per hour, and say that, as they approached, they were paying attention, looking and listening to ascertain if any train was coming; that no alarm or signal was given; and that the approach of the train was first indicated by the smoke rising above the intervening hill from the locomotive. This discovery they say was not made until they were within 35 or 40 feet of the crossing, when the risk

was such that they did not dare to attempt to stop, and took the alternative of increasing their speed, thereby barely escaping destruction. As they escaped, they looked back to warn the deceased, but were too late to be of any assistance. Defendant concedes that the locomotive bell was not sounded, it being out of order; but the engineer and fireman say that the whistle was sounded at or near the post, while Potts and Dotson and other witnesses in position to have heard it, if given, testify that they did not hear it. Naturally, witnesses attempting to speak of the details of a sudden and unexpected calamity, the circumstances of which follow each other in a manner productive of mental excitement and confusion, are rarely able to give an altogether clear or entirely consistent history of their experiences and observations, and whether their conduct is marked by reasonable care or prudence is a conclusion to be deduced from all the proved circumstances, as a question of fact, and not of law. Perfect care or judgment is not given to mankind, and if a person exposed to danger conducts himself with the caution which may reasonably be expected of a person of ordinary prudence and ordinary presence of mind, he is not to be charged with fault, even though, as a matter of cool afterthought or mature consideration, he might better have done otherwise. It is conceded that, in approaching the crossing, the deceased could not have seen the train until quite near the crossing, and he cannot reasonably be held guilty of contributory negligence as a matter of law, in failing to see what was not visible to his inspection. This, of course, would not exempt him from the duty to listen for the sound of moving trains, and to heed the warning signals, if any were given. Of what he did in these respects there is, as we have said, no evidence except the fleeting glance of the two witnesses mentioned, in the last second or two of time preceding the crash of the collision. In face of the evidence of Dotson and Potts, who were leading the way, and who testify that they were looking and listening, and neither saw nor heard any alarm or indication of danger, it will not do for this court to say, as a conclusion of law, that deceased did not look or listen, or that he was negligent in not seeing or hearing signals which were not perceptible to the senses of others who were in like position to

observe them. It is not without bearing upon the merits of the case to say that, in the peculiar situation and surroundings of this crossing, the warning bell of the locomotive, which the law requires to be sounded continuously from the whistling post until the crossing is passed, is manifestly a more important and effective signal than the whistle, which consists of a comparatively short blast or two, and the fact that in this case the bell was not used would be more likely to deceive and mislead into danger a traveler on the highway, emerging from behind the intervening screen of the cut. It is, of course, true that a person using the highway over a crossing is charged with the duty of reasonable care for his own safety, and that the negligence of the company does not excuse negligence on his part; yet nothing is better settled than that his right to anticipate due care and obedience to the law by the company is a legitimate factor to be taken into consideration in passing upon the question whether he did, in fact, exercise the care of an ordinarily prudent person. In such case, the fact, if shown or admitted, that the company was delinquent in its duty, and that the injured person was making legitimate and proper use of the crossing, is ordinarily sufficient to take the issue to the jury. The applicable rule has very recently been restated and reaffirmed in *Johnson v. Omaha & C. B. St. R. Co.*, 194 Iowa 1230, where we said that, while the "failure of the appellant to give proper signals of the approach to the crossing * * * would not of itself absolve the appellee from the duty of using reasonable care, [it] would be a circumstance proper to be considered by the jury in passing on the question of appellee's contributory negligence." See, also, *Dusold v. Chicago G. W. R. Co.*, 162 Iowa 441, 447; *Brose v. Chicago G. W. R. Co.*, 185 Iowa 867; *Grand Trunk R. Co. v. Ives*, 144 U. S. 408; *Continental Imp. Co. v. Stead*, 95 U. S. 161; *Moore v. Chicago, St. P. & K. C. R. Co.*, 102 Iowa 595; *Dombrenos v. Chicago, R. I. & P. R. Co.*, 194 Iowa 1161; *Platter v. Minneapolis & St. L. R. Co.*, 162 Iowa 142; *Davitt v. Chicago G. W. R. Co.*, 164 Iowa 216; *Pennsylvania R. Co. v. Ogier*, 35 Pa. St. 60; *Chicago City R. Co. v. Fennimore*, 199 Ill. 9; *Henry v. Cleveland, C. C. & St. L. R. Co.*, 236 Ill. 219; *Willfong v. Omaha & St. L. R. Co.*, 116 Iowa 548.

Without further discussion, we think it enough to say that, in view of the admitted negligence of the defendant and of the combination of circumstances which characterize the collision, the question of contributory negligence by the deceased presents an issue of fact for the jury, and the trial court did not err in refusing to direct a verdict for the defendant. The point with which appellant closes and emphasizes its argument for a reversal is that:

"Somewhere between a point 84 feet west of the crossing and 40 feet west of the crossing it was the duty of the deceased to look for the train, and to continue to look and listen until he ascertained there was no danger, and to have his automobile under control, and not to rush upon the track in front of the train."

It is much easier to frame a rule which sounds well to the ear as an abstract proposition than it is to make practical application of it to every concrete condition of fact. Take, for instance, the case before us. According to the estimate of defendant's witnesses, its train shot out from the screening bank at a rate of 35 to 40 miles per hour, without the required warning. Potts and Dotson estimate the distance of the train when first seen at 150 feet. It would traverse that distance in considerably less than three seconds. The deceased, being the last to emerge from the cut, would probably be a second later to discover the peril, and at the most liberal estimate of time, he had the small margin of probably not more than two seconds in which to marshal his faculties and insure his safety. The fireman, the only witness able to speak to the point at all, says he thinks the unfortunate young man did, for an instant, try to stop, and that he did turn slightly to the left, but was caught about midway on the track. The law does not, we think, authorize the court to hold that a traveler injured by the negligence of the company under such circumstances is to be conclusively charged with contributory fault.

Counsel have devoted their brief in part to a criticism of the court's charge to the jury and its refusal to give certain requested instructions. We have examined the record in this respect with care, and find no reversible error. In so far as the

requested instructions were proper, they were, in substance, fairly covered by the general charge to the jury. The charge as a whole is, perhaps, open to the criticism that it is too voluminous, and indulges to an unnecessary degree in statement and discussion of abstract legal rules and principles, but we find there nothing of which appellant can properly complain.

The judgment appealed from is—*Affirmed.*

PRESTON, C. J., concurs.

STEVENS and DE GRAFF, JJ., concur in the result.